Anna Erickson White (CA SBN 161385)
AWhite@mofo.com
David J. Wiener (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
ON24, INC., SHARAT SHARAN, STEVEN
VATTUONE, IRWIN FEDERMAN, DENISE
PERSSON, HOLGER STAUDE, DOMINIQUE
TREMPONT, and BARRY ZWARENSTEIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re ON24, Inc. Securities Litigation | Case No.   4:21-cv-08578-YGR<br><br>**ON24 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: August 16, 2022<br>Time: 2:00 p.m.<br>Courtroom: 1 – 4th Floor |

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     PLAINTIFF APPLIES AN IMPERMISSIBLY WEAK PLEADING STANDARD. ........ 2

III.    PLAINTIFF FAILS TO PLEAD A MATERIALLY MISLEADING STATEMENT. ........ 2

        A.    The Challenged Statements of Corporate Optimism Are Not Actionable. .............. 3

        B.    The Forward-Looking Statements Are Not Actionable. ......................................... 5

        C.    Plaintiff Fails to Show That Any Challenged Statement Was False or Misleading. 7

              1.    Plaintiff Lacks Any Contemporaneous Facts Showing Falsity for Any
                    Challenged Statement............................................................................... 8

              2.    Plaintiff's Attacks on ON24's Risk Factors Fail. ..................................... 11

              3.    The Post-IPO Statements Do Not Demonstrate Falsity. ........................... 12

              4.    Plaintiff Fails to Plead the Falsity of the Opinion Statements. .................. 13

              5.    Regulation S-K Did Not Impose a Duty to Disclose. ............................... 14

IV.     PLAINTIFF FAILS TO PLEAD CONTROL-PERSON CLAIMS................................. 15

V.      CONCLUSION....................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................2

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008)..................................................................................................13

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002)....................................................................................................7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997)...................................................................................................13

*Costanzo v. DXC Tech. Co.*,
   2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) ...................................................................3, 5, 9

*Friedman v. Rayovac Corp.*,
   295 F. Supp. 2d 957 (W.D. Wis. 2003) ...................................................................................8

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ..........................................................................5

*In re Atossa Genetics Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017)....................................................................................................7

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
   851 F. Supp. 2d 746 (S.D.N.Y. 2012)......................................................................................6

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2013 WL 5206216 (S.D. Cal. Sept. 13, 2013) ........................................................................5

*In re Celera Corp. Sec. Litig.*,
   2013 WL 4726097 (N.D. Cal. Sept. 3, 2013) ..........................................................................6

*In re DDi Corp. Sec. Litig.*,
   2005 WL 3090882 (C.D. Cal. July 21, 2005) ..........................................................................8

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019)................................................................. *passim*

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) .................................................................................11

*In re Lyft Inc. Sec. Litig.*,
484 F. Supp. 3d 758 (N.D. Cal. 2020) ...............................................................................12

*In re Nimble Storage, Inc. Sec. Litig.*,
252 F. Supp. 3d 848 (N.D. Cal. 2017) ........................................................................3, 4, 10

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...........................................................................................2

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020) ....................................................................3

*In re QuantumScape Sec. Class Action Litig.*,
2022 WL 137729 (N.D. Cal. Jan. 14, 2022) .....................................................................14

*In re Read-Rite Corp.*,
335 F.3d 843 (9th Cir. 2003) ............................................................................................13

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) .........................................................................5, 8

*In re Silver Wheaton Corp. Sec. Litig.*,
2016 WL 3226004 (C.D. Cal. June 6, 2016) ....................................................................11

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .........................................................................................6, 10

*In re STEC Inc. Sec. Litig.*,
2011 WL 2669217 (C.D. Cal. June 17, 2011) ....................................................................8

*In re Violin Memory Sec. Litig.*,
2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ..................................................................15

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011) ...............................................................................................8

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) ..............................................................................................6

*Mingbo Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019) .....................................................................15

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ...........................................................................................2, 13, 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........................................................................................3, 6

*Rodriguez v. Gigamon Inc.*,
325 F. Supp. 3d 1041 (N.D. Cal. 2018) .............................................................................5

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016)........................................................................................................8

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021)......................................................................................................6

*Yourish v. California Amplifier*,
   191 F.3d 983 (9th Cir. 1999)......................................................................................................13

## I.    INTRODUCTION

Plaintiff's Opposition fails to address the dispositive arguments and on-point authority presented in Defendants' Motion.  As the Motion showed, the core theory of the Complaint—that ON24's Offering Documents failed to disclose a purported shift during the COVID-19 pandemic to short-term, one-year contracts with small customers that were focused on limited use cases that did not engage across ON24's multiple product offerings—fails for multiple reasons.

First, ON24 disclosed concrete and objective metrics on these points that Plaintiff does not challenge and that contradict Plaintiff's conclusory allegations.  ON24 disclosed (i) the percentage of its ARR that was attributable to multi-year contracts; (ii) the percentage of customers that were large customers contributing over $100,000 in ARR; and (iii) the percentage of customers with subscriptions to multiple products.

Second, Plaintiff's theory is belied by ON24's undisputed post-IPO results.  Far from facing "declining demand," ON24's growth continued in the three quarters after the IPO as the effects of the pandemic lessened, with 2021 fiscal year revenue increasing 30% year over year.

Third, ON24 explicitly warned that its "recent revenue growth has been significantly impacted by an increasing demand for our platform and products following the onset of the COVID-19 pandemic" and that "[a]s the impact of COVID-19 lessens, there may be reduced demand for our platform, and our revenue growth rate may decline."

Plaintiff has no response.  Instead, Plaintiff focuses on a fraud-by-hindsight theory, arguing that the Offering Documents were misleading because beginning six months after the IPO, ON24 "provided weaker-than-expected revenue and earnings guidance versus analysts' consensus and/or ON24's prior guidance."

Nowhere, however, does Plaintiff explain how these later results rendered any statement in the Offering Documents misleading.  The Offering Documents did not contain any guidance for the periods Plaintiff cites.  Falling below analyst expectations six months to one year after an IPO is not a basis for a Securities Act claim, and Plaintiff's effort to make its case one about "missed" guidance merely reinforces the fundamental deficiencies in the Complaint.

## II.   PLAINTIFF APPLIES AN IMPERMISSIBLY WEAK PLEADING STANDARD.

The Opposition does not rebut Defendants' showing that the Complaint fails to allege that the Offering Documents contained any false or misleading statement.  Instead, the Opposition argues that the Motion should be denied based on the application of an impermissibly weak pleading standard that is unsupported by case law.  Plaintiff argues that the Complaint "does not need detailed factual allegations," and that the Court must "accept all factual allegations ... as true" and construe them in the light most favorable to Plaintiff.  (Opp. 7.)

But that is true only for well-pled factual allegations, not conclusory allegations.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).  Courts do not "accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court must reject "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009).

In other words, a statement is not false or misleading simply because Plaintiff says that it is.  Such a legal conclusion "must be supported by factual allegations."  *Id*. at 679.  That is particularly true here.  Not only are Plaintiff's conclusions contradicted by the text of the challenged statements themselves, but they ignore (and are contradicted by) the detailed disclosures provided in the Offering Documents.[1]  *See Omnicare*, 575 U.S. at 194-96 (challenged statements in Section 11 case must be reviewed "fairly and in context" of other disclosures).

## III.   PLAINTIFF FAILS TO PLEAD A MATERIALLY MISLEADING STATEMENT.

The Motion showed that Plaintiff has failed to plead an actionable misrepresentation or omission for three independent reasons:  (1) many of the challenged statements are non-

---

[1] Plaintiff argues that "Defendants take liberties with the application" of rules regarding judicial notice and incorporation by reference.  (Opp. 8.)  Plaintiff, however, does not identify any instances of such improper "liberties" or explain how Defendants' arguments are inconsistent with Ninth Circuit precedent or the Supreme Court's instruction to analyze the challenged statements "fairly and in context" of ON24's other disclosures.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194-96 (2015).

actionable statements of corporate optimism; (2) many of the challenged statements are protected by the bespeaks caution doctrine; and (3) Plaintiff has not pled the essential element of falsity for any challenged statement. (Mot. § IV.) The Opposition does not overcome this showing. [2]

### A.   The Challenged Statements of Corporate Optimism Are Not Actionable.

The Motion showed that four of the challenged statements are non-actionable statements of corporate optimism that are not "capable of objective verification." (Mot. 7-9.) Plaintiff baldly asserts in response that these statements contain "verifiable statements of fact concerning ON24's customer base as it existed at the time of the IPO." (Opp. 25.) Nowhere, however, does Plaintiff explain how statements about a "highly engaged and loyal customer base" (Stmt. 1); a "large and diverse set of customers" (Stmt. 2); ARR growth resulting from "success in acquiring new customers and expanding subscriptions" (Stmt. 3); and a "significant opportunity to further increase sales among existing customers" (Stmt. 8) are capable of objective verification. Indeed, Plaintiff completely ignores *Intuitive Surgical*, *Pivotal*, and *Costanzo* (Mot. 8), which found substantively identical statements non-actionable.

The Motion also showed that "generally optimistic" statements are non-actionable where the defendants had made objective and verifiable statements on the same topics that were not alleged to be false. (Mot. 8-9, citing *Nimble Storage* and *Intel*.) That principle applies even more forcefully here. Not only did ON24 disclose objective metrics that Plaintiff does not challenge, but those metrics *contradict* Plaintiff's conclusory allegations.

Plaintiff argues that ON24's vague and subjective descriptions of its customer base and sales opportunities were misleading because ON24 had shifted to focus on short-term contracts

---

[2] Plaintiff falsely asserts that the Motion "concedes Statement No. 6 [] is actionable because the Motion does not specifically challenge Statement No. 6 on the basis of falsity or argue that it is an inactionable opinion, puffery, or protected under the bespeaks caution doctrine." (Opp. 11.) The Motion clearly and unambiguously argued that Plaintiff "fails to show that any challenged statement was false or misleading when made." (Mot. 7.) Appendix A "identifie[d] the independent reasons, *in addition to Plaintiff's failure to plead falsity as to any of the challenged statements*, why certain of the statements fail to give rise to a claim." That Statement 6 did not fall within one of these additional, independent grounds does not mean that it was unchallenged.

with small customers that were focused on "event-only" uses, rather than multi-year contracts involving multiple ON24 products. (Opp. 23-25.) On these same points, ON24 disclosed:

- The percentage of its ARR that was attributable to multi-year subscriptions. Contrary to Plaintiff's conclusory allegations, multi-year contracts were a ***higher*** percentage of ARR in 2020 than in the previous pre-pandemic years. (Mot. 14-15.)

- The percentage of its customers contributing at least $100,000 ARR ("100k Customers") and the proportion of ARR attributable to these "generally large organizations" that were ON24's largest customers. (*Id.*) And again, contrary to Plaintiff's conclusory assertions about ON24's growth in 2020 being fueled by a "larger-than-typical percentage" of small customers, $100k Customers represented a ***higher percentage*** of ON24's total customers before the IPO than in the two previous pre-pandemic years. (*Id.*)

- The percentage of its customers with "subscriptions to two or more of [its] experience products." Contrary to Plaintiff's conclusory argument that ON24 had shifted its focus to "event-only" customers "who did not integrate ON24's systems" and were not "primed for upselling," the percentage of customers using multiple products ***increased*** during the pandemic from 17% in 2019 to ***29%*** at the time of the IPO. (Ex. 2 at 63, 64.)

Plaintiff's attempts to cast away *Nimble Storage* and *Intel* do not address Defendants' arguments. Plaintiff suggests *Nimble Storage* involved only allegations that the defendant "inflated its enterprise customer base." (Opp. 24-25.) Not so. The Court addressed statements "touting the growth of [Nimble's] enterprise customer base," including that it added enterprise customers "at a record pace." 252 F.Supp.3d 852-53. The Court found that absent "allegations that the disclosed numbers were false," the plaintiff's claims about "statements about Nimble's enterprise segment are not actionable." *Id.* at 853. With respect to *Intel*, Plaintiff ignores the contrast drawn by the Court between statements that were "vague and immaterial as a matter of law," on the one hand, and objective metrics within "more specific statements" that "presumably could be verified," but were not alleged to be false, on the other. 2019 WL 1427660 at *12-13.

Plaintiff also argues that *Nimble Storage* and *Intel* can be disregarded because they addressed Exchange Act claims. But statements of corporate optimism are non-actionable

regardless of whether they are challenged under the Securities Act or the Exchange Act. *See Costanzo v. DXC Tech. Co.*, 2021 WL 5908385, at *13 (N.D. Cal. Dec. 14, 2021) (applying doctrine to Securities Act claims evaluated under Rule 8); *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (same) (cited by Plaintiff at Opp. 12).

The three cases Plaintiff cites undermine its argument. Each shows that vague, subjective statements are not actionable—specific, verifiable statements contradicted by factual allegations are required.

In *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2013 WL 5206216 (S.D. Cal. Sept. 13, 2013), the court ***granted*** the defendants' motion to dismiss on this ground and found "Defendants' vague, but rosy statements [to] amount to nothing more than puffery." *Id.* at *20. The court explained that "[h]ad Defendants made misleading objective statements about the quality of education provided . . . such as specifically misrepresenting the number of full-time faculty or alleging that they had taken certain steps to assess the quality of education," which they had not, "Plaintiff might have a valid claim." *Id.* In *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397 (N.D. Cal. June 2, 2020), the challenged statements asserted that the latest iPhone launch was "off to a really great start" and drew comparisons to previous product launches, stating "usually, there is some amount of wait until a product shows...in looking at the data," but that "there's not obvious evidence of that in the data" for the latest launch. *Id.* at *14. These statements were contradicted by the allegations that "the data" showed that "preorders were lower than for previous iPhones" launches and the allegation that days later the company "cut production lines" due to low demand. *Id.* at *25, n. 15. Similarly, in *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1055 (N.D. Cal. 2018), the challenged statements "went beyond just providing subjective or emotive descriptions" and made concrete "factual statements" about the company's sales backlog.

Here, Plaintiff makes no such showing. Not only are no specific, objectively verifiable statements challenged, but the objective—and unchallenged—metrics disclosed in the Offering Documents contradict Plaintiff's conclusory assertions.

## B.    The Forward-Looking Statements Are Not Actionable.

The Motion showed that four of the challenged statements are protected by the bespeaks

caution doctrine. (Mot. 9-12.) Plaintiff raises three arguments in response. Each fails.

First, Plaintiff argues that the statements are not forward looking because they discuss a "present intent" to take actions in the future. (Opp. 20.) That a statement expresses the defendants' current belief about its plans for the future does not make it a statement of current or historical fact. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (finding statements that "we continue to expect" and "I suspect that they may increase" to be forward looking). That is because "any announced 'objective' for 'future operations' necessarily reflects an implicit assertion that the goal is achievable based on current circumstances." *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021).

Second, Plaintiff argues that the bespeaks caution doctrine does not apply because the forward-looking statements allegedly omitted "historical facts." (Opp. 19.) But *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996) (cited at Mot. 10), which Plaintiff ignores entirely, rejected Plaintiff's argument. There, the plaintiff alleged that the defendants' prospectus contained "both material omissions and misstatements." The Ninth Circuit nonetheless applied the bespeaks caution doctrine to the challenged forward-looking statements and affirmed dismissal of the prospectus-based claims. *Id.* at 1408-10.

Plaintiff's cited cases also do not support its argument. None of them involved otherwise forward-looking statements that were allegedly misleading due to omissions of historical fact. Each involved statements about current or historical facts. (Opp. 19.) *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 945, 948 (9th Cir. 2005) (addressing "statement[] of historical fact" that "$25 million private equity fund raising has been completed"); *In re Celera Corp. Sec. Litig.*, 2013 WL 4726097, at *2 (N.D. Cal. Sept. 3, 2013) (addressing misleading risk factors); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768-69 (S.D.N.Y. 2012) (addressing statement that "underwriting standards were followed"). They thus did not hold that forward-looking statements were outside the bespeaks caution doctrine simply because of allegations that the challenged forward-looking statement omitted historical facts.

Third, Plaintiff asserts that "broad, generic warnings" do not qualify for protection under the bespeaks caution doctrine. (Opp. 20.) Plaintiff's conclusory attempt to brush away ON24's

on-point risk factors is belied by the Offering Documents.  As shown in the Motion, ON24's risk factors were detailed and specific and address the very issues Plaintiff claims render the Offering Documents misleading.  (Mot. 10-12.)  ON24 warned that "[a]s the impact of COVID-19 lessens, there may be reduced demand for our platform, and our revenue growth rate may decline."  ON24 also warned that "[i]f these new customers elect not to continue their subscription as the impact of COVID-19 lessens, our business, financial condition and results of operations would be harmed" and that its "customers may not renew their subscriptions at the same rate, increase their usage of our solutions or purchase subscriptions for additional solutions, if they renew at all."  (*Id.*)

ON24's risk factors stand in stark contrast to those in *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017)—the only authority cited in Plaintiff's argument on this point.  (Opp. 20.)  In *Atossa Genetics*, the defendants attempted to rely on a "general disclaimer" that the company could be subject to future regulatory action "from other matters" when it knew that the FDA had raised specific concerns regarding one of its products.  *Id.* at 797-98.  Because the warning was "vague enough to cover any concern the FDA might have had related to" any of the defendant's products, the Ninth Circuit found it insufficient.  *Id.* at 798.

**C.    Plaintiff Fails to Show That Any Challenged Statement Was False or Misleading.**

Plaintiff does not contest the legal standard for falsity.  As Defendants showed, Plaintiff must allege "contemporaneous statements or conditions" that are "necessarily inconsistent" with or that "directly contradict" the challenged statement.  (Mot. 6-7, 12).

Rather than attempt to meet this burden, Plaintiff repeatedly refers to allegedly omitted facts that "investor[s] would find it important to know."  But, as the Motion showed, an alleged omission must render a statement actually made in the Offering Documents misleading, not merely "incomplete."  (Mot. 6-7.)  As the Ninth Circuit has held, "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Thus, "to be actionable under the securities laws, an omission must be misleading; in other words ***it must affirmatively create an impression of a state of affairs that differs in a material way from the***

*one that actually exists*." *Id.* (emphasis added). *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016) (cited at Opp. 12) illustrates the point. There, the defendants stated that "all" animal studies supported the safety of a new drug, while failing to disclose that a rat study showed that the drug was potentially carcinogenic. *Id.* at 707-08.

Plaintiff also provides a lengthy string cite for the unremarkable proposition that "[c]ourts have found that misleading statements about a company's customers and demand are actionable under the Securities Act." (Opp. 12.) Each of the cases Plaintiff cites involved allegations about events before the offerings at issue that rendered specific statements in the offering documents misleading. *See In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *12 (C.D. Cal. July 21, 2005) (company "misrepresented the number of its customers by 300%" in the offering documents); *Restoration Robotics*, 417 F. Supp. 3d 1242 at 1261 (metric about "installed base growth of approximately 34%" was misleading because a significant portion of the systems sold had not yet been "installed"); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 711, 720 (2d Cir. 2011) ("before the IPO" the company had "lost an exclusive agreement. . . for its largest customer"); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 986 (W.D. Wis. 2003) (company failed to disclose widespread "channel stuffing" scheme and improper recognition of "millions of dollars in receivables from customers in financial distress"); *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *2, 7-9 (C.D. Cal. June 17, 2011) (company stated that the contract at issue was an "ordinary course contract" due to "increased supply requirements" and "purchases of similar volume could be expected on a recurring basis" when it was actually a "one-off" deal).

As discussed below, the Complaint fails to plead any contemporaneous facts showing falsity with respect to any challenged statement.

### 1. Plaintiff Lacks Any Contemporaneous Facts Showing Falsity for Any Challenged Statement.

**Plaintiff's allegations are contradicted by ON24's undisputed financial results.** The Opposition fails to reconcile the Complaint's conclusory allegations that ON24 faced "declining demand" before the IPO with ON24's undisputed results in the quarters after the IPO. As the Motion showed, ON24's revenue and ARR (i.e., demand) *continued to grow* year-over-year in

the three quarters following the IPO and in FY2021 when compared to FY2020.  (Mot. 5.)

Plaintiff does not dispute ON24's post-IPO growth.  Instead, Plaintiff argues that ON24's post-IPO performance supports Plaintiff's theory because ON24 "provided weaker-than-expected revenue and earnings guidance versus analysts' consensus and/or ON24's prior guidance."  (Opp. 14.)  The Offering Documents, however, did not contain guidance for the quarters Plaintiff cites.  That ON24's results were below analyst expectations six months to one year after the IPO does not show that any statement was false or misleading.  Plaintiff's attempt to transform its case into a case about "missed" guidance only highlights the fundamental deficiencies in the Complaint.

**The CW allegations do not show falsity.**  The Motion showed that none of the "1-year contracts during the second, third, and fourth quarters of 2020" that form the basis for Plaintiff's theory had expired and were up for renewal at the time of the IPO.  (Mot. 13-14.)  As a result, any dip in renewal rates or increases in down-selling by customers would not have occurred (if they occurred at all) until months later, not at the time of the IPO.

Plaintiff argues that the CW allegations show that "many of [ON24's] 2020 customers already told ON24 they were not going to renew in 2021."  (Opp. 15.)  This conclusory assertion does not support an inference that any statement in the Offering Documents was false when made.  *See Costanzo*, 2021 WL 5908385 at *4-5 (rejecting CW allegations that did not render challenged registration statement misleading).  At most, Plaintiff cites anecdotal statements from low-level CWs who allegedly stated that some customers told these CWs they may not renew or expand their subscriptions.  (Opp. 15)  Negotiating positions taken by some customers with some sales representatives are not "facts" that must be disclosed in the Offering Documents.  Plaintiff does not cite any allegations that ON24 was experiencing materially lower renewal rates or higher down-sell rates than its historical norms at the time of the IPO.  Of course, some customers would renew and some customers would not.  That is true of any company.  ON24 warned of the risk and made clear that the risk was heightened as the effects of the pandemic lessened.

In any event, the Opposition completely ignores on-point Ninth Circuit authority cited in the Motion showing that ON24 did not have a duty to speculate about future renewals that would depend entirely on the decisions made by ON24's customers months after the IPO.  (Mot. 14.)

*Stac*, 89 F.3d at 1406-07, is on point and defeats Plaintiff's argument.  In that case, the plaintiff alleged that the defendant company (Stac) failed to disclose that Microsoft was developing a product that would compete directly with the defendant's primary product.  The plaintiff alleged that "Microsoft had informed Stac that it planned to introduce data compression" products and that Stac was required to disclose that the "threat of Microsoft [was] 'looming'" at the time of its IPO.  The Ninth Circuit rejected the plaintiff's argument and found there was no duty to disclose.  The Ninth Circuit explained that "another company's plans cannot be known to a certainty" and even assuming that Microsoft had informed Stac of its plans to develop a competing product during licensing negotiations, the defendant "could not have known whether or not Microsoft would truly do so." *Id.* at 1406-07.  The same is true here.

**Plaintiff ignores the Offering Documents' detailed disclosures.**  The Opposition, like the Complaint, largely ignores the detailed (and unchallenged) metrics ON24 provided about its customer base at the time of the IPO.  (*See supra* § III.A)  The Opposition does not even attempt to reconcile these undisputed metrics with the Complaint's conclusory allegations.

The Motion showed that the Complaint lacks allegations to support an inference that the challenged statements were misleading in light of these objective and undisputed disclosures.  (Mot. 14-15.)  As this Court found in *Nimble Storage* and *Intel*, absent "allegations that the disclosed numbers were false," Plaintiff cannot show that the qualitative and subjective statements about these same topics were materially misleading.  *See Nimble Storage*, 252 F. Supp. 3d at 853; *Intel*, 2019 WL 1427660, at *12 ("[P]laintiff has not alleged that any of the facts contained within any of the other more specific statements were, in fact, inaccurate.").  That is because "[b]ased on such numbers, the market and investors can assess for themselves" ON24's statements regarding its growth, customer base, and sales opportunities.  *Id.* at 853.

The Opposition relegates *Nimble Storage's* and *Intel's* falsity discussion to a footnote.  (Opp. 13, n.8.)  Plaintiff argues that these cases are "inapposite" because the plaintiffs there "failed to plead facts showing that 'disclosed numbers were false.'"  (*Id.*)  Nor does Plaintiff here.  As the Motion showed, Plaintiff does not allege that any metric was misstated or that a single dollar of revenue was recognized improperly.  (Mot. 14-15.)  In fact, Plaintiff expressly concedes

that the Complaint does not contend that these metrics were misstated.  (Opp. 13.)

The cases Plaintiff cites further highlight what is missing here.  In *In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004 (C.D. Cal. June 6, 2016), the allegations showed that the defendants violated GAAP and "withheld documents or information from their independent auditors." *Id.* at *10-12.  In *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230 (N.D. Cal. 2008), the complaint alleged that the defendant's financial statements "overstated its inventory and understated its cost of production." *Id.* at 1243.  There is nothing like that here.

### 2.   Plaintiff's Attacks on ON24's Risk Factors Fail.

The Opposition attempts to wish away the detailed risk factors included in the Offering Documents with conclusory arguments labeling the risk factors "boilerplate."  As the Motion showed, however, the risk factors were specific and tailored to the issues raised by the Complaint.  ON24 explained repeatedly to investors that "[its] recent revenue growth ha[d] been significantly impacted by an increasing demand for [its] platform and products following the onset of the COVID-19 pandemic and resulting precautionary measures" and that "customers may not renew their subscriptions at the same rate" going forward, including because of the possibility that "if the effects of the COVID-19 pandemic subside, [ON24's] customers and their users will resume in-person marketing activities in a way that decreases usage of our platform." (Mot. 15-16.)

The Motion showed that in light of ON24's on-point risk disclosures, Plaintiff cannot "demonstrate that a particular statement, when *read in light of all the information then available to the market* . . . conveyed a false or misleading impression." (Mot. 16, citing *Intel*, 2019 WL 1427660, at 10 (emphasis and alteration in original).)

The Opposition does not directly address this argument, instead claiming that the risk factors were themselves misleading because they discussed "hypothetical risk" while "omitting the present reality of such risks." (Opp. 17.)  But rather than address the fact that one-year contracts signed during the pandemic were still in place at the time of the IPO, Plaintiff relies on conclusory assertions that the risks "had already materialized." (*Id.*)  How so?  By Plaintiff's admission, the contracts were not yet up for renewal and would not be until months after the IPO.  Even assuming there were indications that renewal rates might be lower for ON24's pandemic-era

customers (which, as discussed above, Plaintiff has not pled), the renewals had not yet occurred. The risks were, therefore, in the future and contingent on future events, just as ON24 disclosed.

The only case Plaintiff cites on this point defeats its argument. (Opp. 17.)  In *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758 (N.D. Cal. 2020), the defendant warned that its fleet of rental bikes "may experience quality problems or defects from time to time, which could result in decreased usage of our network of shared bikes and scooters." *Id.* at 775.  The court found this risk factor misleading because at the time of the IPO, the defendants' "fleet of bikes were ***already*** experiencing dangerous defects and were being improperly repaired." *Id.* (emphasis added).

### 3.    The Post-IPO Statements Do Not Demonstrate Falsity.

Lacking allegations showing contemporaneous falsity, Plaintiff pivots to a fraud-by-hindsight argument that ON24's guidance and financial results released six months to one year after the IPO show the Offering Documents were misleading. (Opp. 15-16.)

Each statement Plaintiff cites addresses events that occurred quarters after the IPO.  None are "admissions" that show the falsity of the earlier challenged statements.  For example, Sharan discussed "***higher-than-expected*** churn" in ***Q2 2021*** (¶ 165) and Vattuone commented on "the share of first-time renewals in ***Q2 '21***" being "outsized" and accounting for "high churn" amongst this cohort (¶ 166).  These events in Q2 2021 say nothing about conditions as of the time of the IPO months earlier.  Tellingly, Plaintiff does not even mention ON24's results for the quarter in progress at the time of the IPO, which one would expect would be more probative of then-current conditions.  For good reason:  ON24 reported year-over-year revenue growth of ***102%*** in that quarter and that it had ***gained 68 customers*** since the end of 2020. (Mot. 5; Ex. A at 22.[3])

Plaintiff attempts to shoehorn its argument into Ninth Circuit cases discussing whether "shortness of time" between statements can be probative of falsity. (Opp. 16.)  The cases on which Plaintiff relies bear no resemblance to the allegations here and, in fact, undermine Plaintiff's argument.  Each involved "temporal proximity" measured in weeks—not six months—and allegations that subsequent disclosures were in direct conflict with earlier statements.  In

---

[3] Exhibit A to the Reply Declaration of David J. Wiener is a Form 10-Q filed publicly by ON24 with the SEC and is properly subject to judicial notice. *See Intel*, 2019 WL 1427660, at *7.

*Cooper v. Pickett*, 137 F.3d 616, 626 (9th Cir. 1997), the defendants allegedly **inflated their reported revenue in violation of GAAP**. They also claimed the company would complete a stock offering to provide much needed liquidity but canceled the offering **three weeks later** after insiders sold their shares at inflated prices. Similarly, in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008), **two weeks** after touting strong backlog figures, the defendants disclosed a "stop-work order" "on the company's largest contract with one of its most important customers." *Id.* at 988 & n.5. There was no dispute that the stop-work order was sent before the challenged disclosure. The Ninth Circuit's discussion addressed only whether the temporal proximity of the disclosure supported an inference that the individual defendants were aware of the stop-work order at the time the challenged statement was made. *Id.*

In any event, temporal proximity, on its own, cannot support an inference of falsity. *See Yourish v. California Amplifier*, 191 F.3d 993, 997 (9th Cir. 1999); *In re Read-Rite Corp.*, 335 F.3d 843, 847 (9th Cir. 2003). Like in *Yourish*, there are "no other adequately pleaded allegations for the temporal proximity to bolster." *Id.* at 997.

### 4.    Plaintiff Fails to Plead the Falsity of the Opinion Statements.

Plaintiff fails to show the subjective or objective falsity of any of the three challenged opinions. (Mot. 18-19.) Plaintiff attempts to avoid the pleading standards for statements of opinion by arguing that the Complaint does not challenge the portions of the challenged statements that include the words "we believe." (Opp. 21.) That is not the law. Reading the statements in context, the challenged statements reflect opinions about ON24's business opportunities, sales strategies and customer base: "We believe we can achieve significant organic growth by expanding penetration of our existing customer base. Our land and expand model drives expansion of new subscriptions within our existing customer base . . ." (Stmt. 4); "[w]e believe our opportunity to help businesses convert digital engagement into revenue will continue to grow as industries modernize their sales and marketing processes, which has been accelerated by the COVID-19 pandemic" (Stmt. 5); and "[w]e believe we can achieve significant growth by retaining and further penetrating our existing customer base with the addition of new users and new products, and through upsell and cross sell" (Stmt. 8). *Omnicare* applies.

**False statement provision.** Plaintiff contends that the challenged statements are misleading under *Omnicare's* second prong because they contained false statements of "embedded facts." (Opp. 21-22.) The so-called embedded facts Plaintiff identifies are Plaintiff's invention. Nowhere in the challenged statements did ON24 assert that its customer base was "comprised of its traditional clients who regularly renew and upsell" or that all customers were "primed for upselling," as Plaintiff baldly asserts. In contrast, *In re QuantumScape Sec. Class Action Litig.*, 2022 WL 137729 (N.D. Cal. Jan. 14, 2022) (cited at Opp. 22), provides examples of potentially actionable embedded facts. There, the opinion statements also included "the supporting factual assertion that . . . data showed the technology 'may provide significant improvements in energy density' over conventional lithium-ion batteries." *Id.* at *16. There is nothing like that here. In any event, for the same reasons discussed above in § III.C.1, Plaintiff fails to plead that any of the allegedly embedded factual assertions were false when made.

**Omissions provision.** Plaintiff also argues that it has pled an "omission" under *Omnicare's* third prong. To do so, Plaintiff must (1) "identify particular (and material) facts going to the basis for the [defendant's] opinion"; (2) show that the facts were material, *i.e.*, that "there is a substantial likelihood that a reasonable investor would consider it important"; and (3) show that the omission of the facts rendered the opinion statement misleading to a reasonable person reading it "fairly and in context." (Mot. 18-19.) This is "no small task for an investor," *Omnicare*, 575 U.S. at 194, and Plaintiff does not come close to meeting its burden. As discussed above, Plaintiff fails to show how any reasonable investor would have been misled by the challenged opinions, particularly in the context of the Offering Documents' unchallenged, objective facts and metrics relating to ON24's performance and its disclosed risk factors.

### 5.      Regulation S-K Did Not Impose a Duty to Disclose.

#### a.      Item 303

As the Motion showed, pleading an Item 303 violation requires a trend or uncertainty that: (1) was "known" to management and (2) had or was reasonably expected to have a "favorable or unfavorable impact on net sales or revenues or income from continuing operations." (Mot. 19.) Plaintiff ignores all of the authority cited in the Motion and argues that the Complaint meets this

burden with allegations that ON24's executives attended "sales and client success meetings" and reviewed "churn reports." (Opp. 18.)  Plaintiff misses the point.  The allegation that executives tracked "churn" or monitored sales or renewal opportunities does not show that there was an undisclosed known decline in demand due to allegedly low renewal rates before the IPO.  What did these reports show?  What were the signs of declining demand?  How had renewal rates changed?  Plaintiff has no answer.  For good reason:  revenue and ARR (i.e., demand) *increased* year over year in the three quarters after the IPO and in FY2021 compared to FY2020.  (Mot. 20.)

At most, Plaintiff pleads that ON24, like any company, tracked sales to its customers and monitored the possibility that some of its customers may not renew in the future.  As discussed above, the Offering Documents warned of this risk in detail and specifically discussed the renewal risks presented by the lessening effects of the COVID-19 pandemic.[4]

### b.    Item 105

As the Motion demonstrated, and as discussed above, Defendants disclosed the very risks Plaintiff alleges were omitted from the Offering Documents.  Accordingly, Plaintiff fails to show that SEC Regulation S-K Item 105 imposes a duty for any additional disclosure.[5]

### IV.    PLAINTIFF FAILS TO PLEAD CONTROL-PERSON CLAIMS.

As the Motion showed, Plaintiff's claims under Section 15 should be dismissed because Plaintiff has failed to plead a violation under Section 11.  (Mot. 19.)

### V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[4] Plaintiff's cited authorities show where the Complaint falls short.  In *Violin Memory*, federal government budget cuts were implemented before the IPO and had already caused a "decline of the Company's federal government sales" when the challenged registration statement was issued. *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *15 (N.D. Cal. Oct. 31, 2014).  In *Switch*, the defendants switched their business model to address a different type of cloud computing product.  The change introduced "new complications" to the product and "required engineering" changes that were undisclosed in the challenged offering documents. *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5-6 (D. Nev. July 12, 2019).

[5] In a footnote, Plaintiff asserts that Defendants violated SEC Rule 408 by allegedly failing to "disclose all material information necessary to make the Offering Documents not misleading." (Opp. 10, n.7.)  This claim was not pleaded in the Complaint.  In any event, Plaintiff's argument fails for the same reasons as the "omissions theory" discussed above in Section III.C.

Dated:  July 18, 2022

ANNA ERICKSON WHITE
DAVID J. WIENER
MORRISON & FOERSTER LLP


By:      */s/ Anna Erickson White*
ANNA ERICKSON WHITE

Attorneys for Defendants
ON24, INC., SHARAT SHARAN, STEVEN
VATTUONE, IRWIN FEDERMAN, DENISE
PERSSON, HOLGER STAUDE,
DOMINIQUE TREMPONT, AND BARRY
ZWARENSTEIN